Eastern District of Kentucky
**F I L E D**

SEP 2 1 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-572-GWU

JASON SLUSHER,                                                           PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to
     Step 4. If no, the claimant is not disabled. See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

Slusher

4.    Can the claimant's severe impairment(s) be expected to result
      in death or last for a continuous period of at least 12 months?
      If yes, proceed to Step 5. If no, the claimant is not disabled.
      See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of
      impairments meeting or equaling in severity an impairment
      listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
      Impairments)? If yes, the claimant is disabled. If no, proceed
      to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a),
      416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his
      residual functional capacity and the physical and mental
      demands of the work he has done in the past, still perform this
      kind of past relevant work? If yes, the claimant was not
      disabled.    If no, proceed to Step 7.    See 20 C.F.R.
      404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his
      residual functional capacity, age, education, and past work
      experience, do other work--i.e., any other substantial gainful
      activity which exists in the national economy? If yes, the
      claimant is not disabled.    See 20 C.F.R. 404.1505(a),
      404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.    Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Slusher

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Slusher

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Slusher

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Slusher

physical and mental impairments.   <u>Varley v. Secretary of Health and Human</u>

<u>Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jason Slusher, was found by an Administrative Law Judge (ALJ)

to have "severe" impairments consisting of a seizure disorder, an anxiety disorder,

and a learning disorder.  (Tr. 14).  Nevertheless, based in part on the testimony of

a vocational expert (VE), the ALJ determined that Mr. Slusher retained the residual

functional capacity to perform a significant number of jobs existing in the economy

and, therefore, was not entitled to benefits.  (Tr. 14-17).  The Appeals Council

declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of

the plaintiff's age of 28 years, past unskilled work experience, and a "marginal"

education could perform any jobs if he had no exertional limitations, but should never

climb ladders, ropes, or scaffolds and needed to avoid all exposure to hazardous

moving machinery and unprotected heights. (Tr. 55). The ALJ further specified that

the individual could understand, remember, and carry out simple instructions and

tasks in an object-focused setting that included no more than minimal collaboration

with co-workers and supervisors and no more than incidental and superficial contact

with the public.  (Id.).  The VE responded that there were jobs that such a person

could perform, and proceeded to give the numbers in which they existed in the state

and national economies.  (Tr. 55-6).

7

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Slusher filed his current application for SSI alleging disability due to seizures, back and knee problems, and nerves. (Tr. 156). At the administrative hearing, however, he testified that his only problem apart from seizures was back pain, but he would be able to go back to work if it were not for his seizure problem. (Tr. 34-5).

Medical records in the transcript include a normal lumbosacral spine x-ray from April, 2000 (Tr. 257) and, while the plaintiff had a knee injury in a motorcycle accident in 1999, a physician subsequently found a full range of motion (Tr. 238-9). In view of the fact that there was no evidence of a permanent musculoskeletal impairment, the ALJ's determination that there was no "severe" impairment in this area is supported by substantial evidence.

The plaintiff and his mother did testify at the administrative hearing that he had developed a fairly recent seizure problem, and the mother testified to six or seven seizures in the past month. (Tr. 45). Medical records from the plaintiff's treating neurologist, Dr. Arden Marc Acob, show that Mr. Slusher was evaluated in 2002 and 2003 for reported seizure activity, but physical examinations were essentially normal and an MRI of the brain was unremarkable. (Tr. 298-320, 406-8). Dr. Acob did make a diagnosis of partial seizures and migraine headaches, but did

8

Slusher

not list any functional restrictions. (E.g., Tr. 408). The only limitations on the plaintiff's physical activity came in a physical residual functional capacity assessment completed by a state agency reviewing physician, which listed restrictions consistent with the ALJ's hypothetical question. (Tr. 368-75). The plaintiff does not challenge these restrictions on appeal.

The plaintiff's arguments concern his mental functioning.

First, the plaintiff alleges that the hypothetical question was inconsistent with statements in the ALJ's decision indicating that he had mild to moderate restrictions of activities of daily living, mild to moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 13). The statements were made by the ALJ as part of her evaluation of whether the plaintiff met the "B" criteria of the Commissioner's Listings of Impairment, however, and did not represent a functional capacity assessment. Moreover, the limitation in the hypothetical question to no more than minimal collaboration with co-workers and supervisors and no more than superficial contact with the public in an object-focused setting involving simple instructions and tasks is essentially consistent with the findings under the "B" criteria, in any case.

Second, the plaintiff challenges the ALJ's finding that he had a "marginal" education, pointing to his history of special education (Tr. 218) and results from a Wechsler Individual Achievement Test (WIAT) taken by Mr. Slusher in April, 1995, at the age of 19 (Tr. 214). The WIAT shows a "basic reading" grade equivalent of

9

Slusher

"2:0," a spelling grade equivalent of "2:9," and a "reading comprehension" grade equivalent of "5:2." (Id.). The plaintiff maintains that the "basic reading" grade equivalent and his testimony at the administrative hearing that he could not write or spell (Tr. 52) are evidence that he was essentially illiterate. The plaintiff also cites the case of Skinner v. Secretary of Health and Human Services, 902 F.2d 447 (6th Cir. 1990) for the proposition that an individual who reads and writes at the third grade level or below is functionally illiterate. Id. at 450. The court in Skinner noted that the Commissioner's regulations define illiteracy as someone who "cannot read or write a simple message such as instructions or inventory lists even though that person can sign his or her name" and that "generally, an illiterate person has had little or no formal schooling." Id., citing 20 C.F.R. section 404.1564(b)(1). "Marginal education" is defined as reflecting the "ability in reasoning, arithmetic and language skills which are needed to do simple, unskilled types of jobs" and that "we generally consider that formal schooling at a sixth grade level or less is a marginal education." Id., citing 20 C.F.R. Section 404.1564(b)(2).

In the present case, the plaintiff, although classified as learning disabled, did reach the 11th grade at the age of 19 after being retained in the first grade and the ninth grade. (Tr. 192, 218). Intellectual testing at the age of 19 showed a verbal IQ of 80, a performance IQ of 97, and a full-scale IQ of 85. (Tr. 219). At that point, his school's Admissions and Release Committee recommended that he be enrolled in a standard level vocational class at a technical school. (Tr. 192). His WIAT reading

10

Slusher

comprehension score was described as "low average." (Tr. 294). Moreover, the plaintiff stated on his current disability report that he could read English, and could write more than his name. (Tr. 155). Thus, he was dissimilar to the plaintiff in Skinner, who asserted that he did not complete his education beyond the third grade, that he could not read a newspaper, that he could not write beyond signing his own name, and that he needed assistance to transact purchases. Skinner, 902 F.2d at 448. Taking the evidence as a whole, there was substantial evidence to support the ALJ's finding of a "marginal" education.

The decision will be affirmed.

This the ___21___ day of September, 2005.

G. WIX UNTHANK
SENIOR JUDGE